UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
5W PUBLIC RELATIONS, LLC.,

                Plaintiff,

   -against-

LINDSEY BENOIT, TINA WELLS, and
BUZZ MARKETING GROUP LIMITED LIABILITY
COMPANY

                Defendants,

------------------------------------------------------------------------x



**05 CV 3463**

**COMPLAINT**

**JUDGE HOLWELL**

## THE COMPLAINT

The Plaintiff 5W Public Relations, LLC. ("5W"), by its attorney Frederic C. Weiss, as and for its Complaint avers as follows:

### JURISDICTION

There is complete diversity of jurisdiction of citizenship between the Plaintiff and all of the Defendants in this action. As will be more fully explained below, the amount in dispute in this action, exclusive of interest and costs, exceeds the sum of $75,000. Therefore, this Court has jurisdiction over this dispute by virtue of 28 U.S.C. Sec. 1332.

### THE PARTIES

1. The Plaintiff 5W Public Relations, LLC. is a New York limited liability company with

1

offices at 45 West 45th Street, New York, New York 10036.

2. Upon information and belief, the defendant Lindsey Benoit ("Benoit") resides at 155 Virginia Avenue, West Springfield, Massachusetts 10089.

3. Upon information and belief, the defendant Buzz Marketing Group Limited Liability Company ("Buzz") is a New Jersey Limited Liability Company with offices at 12 Parsons Court, Erial, New Jersey 08081.

4. Upon information and belief, the Defendant Buzz also maintains an office at 535 West 34th Street, New York, New York 10001 but is not listed in the records of the State of New York as having been qualified to do business in New York State.

5. Upon information and belief, the defendant Tina Wells ("Wells") resides and/or maintains an office at 12 Parsons Court, Erial, New Jersey 08081.

6. Upon information and belief, the Defendant Wells is the Chief Executive Officer of Buzz.

## BACKGROUND

7. The Plaintiff 5W is a public relations company located in New York City, which has been profiled in the February 20, 2005 edition of *The New York Times* and upon information and belief has been named as the fastest growing public relations company in New York by The Holmes Report, a public relations trade paper.

8. Ronn D. Torossian ("Torossian") is the founder, President and Chief Executive Office of 5W.

9. Katy Saeger ("Saeger") is the Vice President/Group Director of 5W.

10.     In or about May 2004 the Plaintiff hired the Defendant Benoit to work as an assistant to, and under the supervision of, Sager with the title of Account Coordinator. In connection with her employment by the Plaintiff, the Defendant Benoit had access to the Plaintiff's proprietary information, trade secrets, and confidential information.

11.     At the commencement of her employment with the Plaintiff, on May 17, 2004 the Defendant Benoit executed an agreement with the Plaintiff (the "Agreement"). Pursuant to the terms of the Agreement Benoit expressly agreed not to disclose proprietary information of the Plaintiff, and further agreed not to compete with the Plaintiff.

12.     The Agreement contained a Restrictive Covenant which stated as follows:

> "In consideration for your continued employment with the Company, you hereby covenant and agree that during your employment with the Company and for a period of one and a half years or eighteen (18) months after termination of employment with the Company for any reason, whether with or without cause, you, if engaged in any business similar to or competitive with the business of the Company, either as an owner, principal, proprietor, partner, shareholder, director, officer or employee shall not solicit for representation, accept business from, deal with any manner whatsoever or represent any clients of the Company. As used herein, 'client of the Company' shall mean any entity to whom or to which the Company, or any employee on behalf of the Company has rendered professional or personal services at any time within the one and a half years eighteen, or (18) month period immediately preceding your termination of employment with the company, with or without cause, and shall include the person, firm, corporation, venture or other entity to whom or to which the Company...rendered [services] and any such related party, such as, but not limited to the estate of the client, a trust created by such client, and any partnership corporation or venture of which such client is a partner, shareholder or participant. However, Client of the Company does not include any person who previously was employed as a client of the Company and who is no longer so employed." (Agreement, P. 1).

The Agreement also provided in relevant part that:

> "You also agree that you will not, either during your employment by the Company

3

or for a period of one and a half years or eighteen (18) months thereafter, solicit, hire or otherwise engage or contact with any employee of the Company for such employee's services as employee, consultant, partner, independent contractor or otherwise."

13. The Agreement also contained a non-disclosure provision which stated that:

"[Y]ou may acquire knowledge of the Company's trade secrets and other [proprietary] and confidential business information. The purpose of this letter is to protect the Company by, among other things providing for your non-disclosure of this information and your non-competition

14. The Agreement further provided the Plaintiff with the remedy of injunctive relief, as well as the right to pursue a claim for monetary damages.

15. The Defendant Benoit's execution of the Agreement was a material term of her employment by the Plaintiff because during the course of her employment by 5W she would have exposure to both the Plaintiff's clients and access to the Plaintiff's proprietary information and training. The Agreement was necessary in order to prohibit the Defendant Benoit from directly misappropriating Plaintiff's proprietary information and clients, or being used by prospective competitors or clients of the Plaintiff as a conduit for obtaining access to Plaintiff's proprietary information and clients by "hiring away" one of its employees.

16. Between May 2004 and February 28, 2005 the Defendant Benoit worked as an assistant to Katy Saeger, with the title of Account Coordinator and thereafter of Assistant Account Executive at 5W.

17. In or about February, 2005, the Defendant Benoit advised Ronn D. Torossian and Katy Saeger that she was resigning from 5W, effective March 1, 2005 to start a new position

4

at a higher salary with VH-1, a company where she had previously had an internship before coming to work at 5W.

18.     Torossian and Saeger extended their congratulations and offered to assist the Defendant Benoit in her position at VH-1.

19.     The Defendant Benoit continued to work at the Plaintiff from the date that she tendered her notice on or about the second week of February, 2005 through February 28, 2005 when she left her position at Plaintiff 5W to start her new position at "VH-1."

### *5W Discovers the Defendant Benoit's Deception*

20.     On or about Monday, March 21, 2005 Torossian conducted a "Google search" of the name of the Plaintiff 5W to ascertain whether there was any coverage of 5W in the media over the prior week. During the course of his internet search, Torossian was surprised to discover a reference to 5W Public Relations in the website of the Defendant Buzz whereby the Defendant Benoit was listed as the "Director, Entertainment & Lifestyles Group" and had a separate webpage (the "Benoit Webpage") contained in the Buzz website which featured a photograph of the Defendant Benoit and listed her purported professional credentials.

21.     The Benoit Webpage provided the following information "about Lindsey [Benoit]."

> "Lindsey Benoit is the Director of Entertainment and Lifestyle at Buzz MG. With a degree in Communications and Psychology, Benoit began her career in Public Relations. Coming from 5W Public Relations, Benoit worked with clients such as United Retail (55 AVENUE stores in the United States), Brian Kilmeade (THE GAMES DO COUNT), Lower Manhattan Cultural Council..........Evian, and many others in the entertainment industry...."

5

22. Upon reading the Benoit Webpage, Torossian first discovered that the Defendant Benoit had lied to him and to Katy Saeger, when she first gave notice to the Plaintiff and represented that she was leaving her position at the Plaintiff at the end of February 2005 because she had accepted a position to work at VH-1.

23. In addition to deceiving the Plaintiff regarding her prospective employment plans, the Benoit Webpage contained numerous misrepresentations and exaggerations regarding the scope of Benoit's duties and responsibilities at the Plaintiff with respect to the 5W clients that she claimed to have worked with. Benoit's unauthorized listing of the Plaintiff's clients on the Benoit Webpage further evidenced her misappropriation of client names and customer lists, as well as other proprietary information belonging solely to the Plaintiff.

24. Upon information and belief, the Defendant Benoit's exaggerated description of her level of involvement with various client accounts and her "name dropping" of some of Plaintiff's important accounts (including some with respect to which her involvement was minimal if at all) was an attempt to improperly bolster her own credentials and to enhance both her own, and Buzz's, prestige reputation and marketability in the public relations and marketing industry.

25. Upon information and belief, if at the time of her resignation from the Plaintiff the Defendant Benoit had been truthful with Torossian and Saeger and disclosed her true intention to accept a position with the Defendants Buzz and Wells--a former client, and a potential competitor--the Plaintiff would have terminated Benoit immediately and provided her with no further access to confidential proprietary information at the Plaintiff's offices.

6

26. The Plaintiff relied upon the Defendant Benoit's misrepresentations that she was going to work for VH-1 in permitting her to remain as an employee of the company for approximately two additional weeks until she left her job in late February 2005.

27. By letter dated March 21, 2005 from Frederic C. Weiss, the attorney for the Plaintiff to the Defendant Benoit, the Plaintiff advised the Defendant Benoit that her acceptance of a position with the Defendant Buzz was in breach of the Agreement inasmuch as Buzz was deemed to be a "client of the Company" as defined in the Agreement. The letter further demanded that the Defendant Benoit cease misappropriating the Plaintiff's proprietary information by listing the name of clients on the Benoit Webpage.

28. Later that evening on March 21, 2005 the Defendant Benoit responded by email to the Plaintiff's attorney and advised him that she had

> "...read the attached document [the Weiss Letter] from Mr. Torossian and 5W Public Relations. I understand the document and am confirming that I am no longer affiliated with Buzz Marketing Group. Please advise that this issue is resolved and the attached document [the Weiss Letter] has been complied with."

29. Upon information and belief, Benoit's representation contained in her email to Frederic C. Weiss that she was "no longer affiliated with Buzz Marketing Group" was false, and that notwithstanding her representation to the contrary, the Defendant Benoit continued, and continues, to be employed by the Defendant Buzz.

### *The Defendant Benoit's Misappropriation of Proprietary Information*

30. The Defendant Benoit was employed as an assistant to Katy Saeger, Vice President/ Group Director of the Plaintiff 5W, and had access to her files which contained trade secrets and confidential and proprietary information.

7

31.     After learning that the Defendant Benoit had deceived the Plaintiff regarding the true identity of her employer, Saeger discovered that her media training file containing confidential proprietary information which she had developed over the years (the "Media Training File") had been removed without her knowledge or her consent.

32.     Upon information and belief, other than Saeger, the Defendant Benoit was the only person who had knowledge of, and access to, the location of the Media Training File.

33.     Upon information and belief the Defendant Benoit misappropriated the Media Training File and other trade secrets and proprietary information in violation of the Agreement prior to leaving the Plaintiff's employ.

### *Buzz's Hiring of Benoit Was Prohibited By The Retainer Agreement*

34.     Upon information and belief, the Defendant Buzz is an entity owned and operated by the Defendant Wells, who also acts as its Chief Executive Officer.

35.     Upon information and belief the Defendant Wells and the Defendant Buzz are former clients and/or related entities of clients of the Plaintiff as defined in the Agreement. In addition, the Defendants Wells and Buzz were both prospective clients, as well as potential competitors of the Plaintiff.

36.     On February 5, 2004 the Plaintiff entered into a retainer agreement with an entity named "Blue Fusion" that was signed by the Defendant Wells and Morris L. Reid, on behalf of Blue Fusion (the "Retainer Agreement").

37.     The Retainer Agreement, for a minimum term of six months, contained a

8

"Non-Solicitation" clause that stated that

> "Recognizing the time and expense of 5W Public Relations investment in its employees, client agrees that it shall not directly or indirectly employ, hire or retain any person who is an employee of 5W Public Relations during the term of this agreement and for a period of one (1) year following the termination of this Agreement."

38. Upon information and belief, in an email from the Defendant Wells to Mr. Torossian, and Morris L. Reid dated October 20, 2004 the Defendant Wells acknowledged that for all intents and purposes Buzz and Blue Fusion were virtually the same entity, and stated that

> "Why am I always being asked if something is for Buzz/Blue Fusion? EVERYTHING I do is Buzz/Blue Fusion. I would obviously not ask 5WPR to do anything that is not helping Blue Fusion. I seriously get asked this once every day."

39. Upon information and belief, and subject to additional discovery, notwithstanding her prior business relationship with the Plaintiff, prior to the expiration of the Non-Solicitation provision of the Retainer Agreement, the Defendant Wells, both individually and through the Defendant Buzz, induced the Defendant Benoit to breach her Agreement with the Plaintiff and to deceive the Plaintiff with respect to the true identify of her prospective employer--- the Defendant Buzz.

40. Upon information and belief, and subject to additional discovery, the Defendants deceptive scheme was intended to provide the Defendant Benoit with additional time and opportunity to misappropriate the Plaintiff's proprietary information while planning her transition to her new position at Buzz. Upon information and belief, in breach of the Retainer Agreement, the Defendant Wells induced the Defendant Benoit to breach the Non-Disclosure and

Case 1:05-cv-03463-RJH   Document 1   Filed 04/04/05   Page 10 of 19

Restrictive Covenant provisions of the Agreement, and misappropriate the Plaintiff's proprietary information for the benefit of the Defendants Wells and Buzz.

41. Upon information and belief, the Defendants Wells' and Buzz's conduct in soliciting the Defendant Benoit to work for Buzz and thereafter benefitting from proprietary information that the Defendant Benoit misappropriated from the Plaintiff has damaged, and continues to damage, the Plaintiff's business, good will and reputation in the public relations industry.

42. On March 21, 2005 the Plaintiff's attorney, Frederic C. Weiss wrote the Defendants Wells and Buzz a letter notifying her that her solicitation and hiring of the Defendant Benoit and misappropriation of proprietary information constituted a default of both the Retainer Agreement and the Agreement. The letter requested that Wells confirm in writing that she would "...voluntarily comply with the terms of the Agreement and the Retainer Agreement, and is willing to take immediate action to mitigate the damage that [Plaintiff] has already suffered." Plaintiff's attorney has received no response to his letter from the Defendant Wells confirming that she would comply with the Retainer Agreement or the Agreement.

43. The Plaintiff has commenced this action to preserve its rights and remedies pursuant to the Agreement, the Retainer Agreement, at law and at equity.

## AS AND FOR THE PLAINTIFF'S FIRST CLAIM FOR RELIEF
### (Breach of Contract)

44. The Plaintiff repeats each and every allegation set forth in Paragraphs "1" through "43" of the Complaint as if set forth at length herein.

10

45.     Upon information and belief the Defendant Benoit's acceptance of employment with the Defendants Buzz and Wells was in breach of the Restrictive Covenant contained in the Agreement.

46.     Upon information and belief, the Defendant Benoit's misappropriation of proprietary and confidential information and trade secrets that belonged solely to the Plaintiff, including but not limited to the Media Training File, was in breach of the non-disclosure provisions contained in the Agreement.

47.     By reason thereof, the Plaintiff has been damaged, and will continue to be damaged, in an amount to be determined at trial, but not less than $100,000 with interest from February 15, 2005.

## AS AND FOR THE PLAINTIFF'S SECOND CLAIM FOR RELIEF

### (Injunctive Relief)

48.     The Plaintiff repeats each and every allegation set forth in Paragraphs "1" through "47" of the Complaint as if set forth at length herein.

49.     The Agreement expressly provides that in the event of a breach of the restrictive covenant, the Plaintiff is entitled to injunctive relief.

50.     By reason thereof the Plaintiff requests an injunction against the Defendant Benoit's breach of the Restrictive Covenant prohibiting her from working for the Defendant Buzz and the Defendant Wells.

## AS AND FOR THE PLAINTIFF'S THIRD CLAIM FOR RELIEF

### (Fraud)

51.     The Plaintiff repeats each and every allegation set forth in Paragraphs "1" through "50" of the Complaint as if set forth at length herein.

52.     In or about the second week of February 2005 the Defendant Benoit tendered her resignation from the Plaintiff upon two weeks notice. In resigning from the Plaintiff, the Defendant Benoit materially represented the true identity of her actual prospective employer (Buzz). Instead of disclosing to the Plaintiff her intention to accept a position with the Defendants Buzz and Wells, the Defendant Benoit represented that she was leaving the company to accept a position at VH-1.

53.     In permitting the Defendant Benoit to remain at her job at 5W until she started her new position "at VH-1" the Plaintiff relied upon the Defendant Benoit's misrepresentations of the identity of her prospective employer VH-1 to its detriment.

54.     Upon information and belief, had the Defendant Benoit disclosed the true identity of her prospective employer (Buzz), the Plaintiff would have terminated her employment and required Benoit to immediately vacate the Plaintiff's offices without further notice, in order to limit her from any further opportunity to remove and misappropriate any of the Plaintiff's trade secrets, confidential information and proprietary information.

55.     Upon information and belief, had the Defendant Benoit disclosed the name of her actual prospective employer (Buzz), the Plaintiff would have commenced an action seeking injunctive relief to bar Benoit from commencing work at Buzz and misappropriating the Plaintiff's proprietary information for use in performing services for Buzz. Upon information and belief, and subject to additional discovery, while the Defendant Benoit is listed as "Director,

Entertainment & Lifestyle Group" she is in fact providing "in house" public relations services for the Defendants Wells and Buzz, and their clients.

56. Upon information and belief the Defendant Benoit made the misrepresentations regarding the true identity of her prospective employer and the scope of her employment duties with the intention of deceiving the Plaintiff, with knowledge that working for the Defendants Wells and Buzz would violate the Agreement. Upon information and belief, the Defendant Benoit made these false representations with knowledge that the Plaintiff would rely upon these misrepresentations, and the Plaintiff did rely upon these misrepresentations to its detriment.

57. Upon information and belief, and subject to additional discovery, as part of the Defendant Benoit's fraudulent scheme, through deception and dishonesty (1) Benoit exploited her continued access to the 5W offices after giving her notice to misappropriate proprietary information; (2) Benoit provided Buzz and Wells with 5W's proprietary information; and (3) Benoit misrepresented the scope of her duties at 5W in the Benoit Webpage in an effort to profit from the services provided by other employees and principals at 5W, thus misappropriating the client good will of 5W.

58. By reason thereof, the Plaintiff is entitled to compensatory damages in an amount to be determined at trial but not less than $100,000, and by reason of her egregious conduct, punitive damages in an amount to be determined at trial but not less than $100,000 with interest from February 15, 2005.

**AS AND FOR THE PLAINTIFF'S FIFTH CLAIM FOR RELIEF**

(Breach of Contract By The Defendants Buzz and Wells)

59. The Plaintiff repeats each and every allegation set forth in Paragraphs "1" through "58" of the Complaint as if set forth at length herein.

60. Upon information and belief, the Defendant Buzz is a related entity to Blue Fusion and the Defendant Wells is a principal of both Blue Fusion and Buzz.

61. Upon information and belief the Defendants Wells' and Buzz's solicitation of the Defendant Benoit to accept an employment position at Buzz was in breach of the Non Solicitation clause of the Retainer Agreement whereby Blue Fusion and Wells agreed "that it shall not directly or indirectly employ, hire or retain any person who is an employee of 5W Public Relations during the term of this agreement and for a period of one (10) year following the termination of this Agreement."

62. By reason thereof the Plaintiff is entitled to judgment against the Defendant Buzz and the Defendant Wells, jointly and severally, for compensatory damages in an amount to be determined at trial but not less than $100,000, with interest from February 15, 2005.

### AS AND FOR THE PLAINTIFF'S SIXTH CLAIM FOR RELIEF

(Tortuous Interference of Contract By The Defendants Buzz and Wells)

63. The Plaintiff repeats each and every allegation set forth in Paragraphs "1" through "62" of the Complaint as set forth at length herein.

64. Upon information and belief, and subject to additional discovery, the Defendants Buzz and Wells tortuously interfered with the Plaintiff's Agreement with the Defendant Benoit by inducing her to breach her Agreement with the Plaintiff by (a) inducing Benoit to resign from

the Plaintiff and accept a position to work for the Defendant Buzz; (b) inducing Benoit to deceive the Plaintiff regarding the true identity of her prospective employer; c) induce Benoit to breach the terms of the Agreement by misappropriating trade secrets and other proprietary and confidential business information from the Plaintiff for Benoit's use and benefit, and for the use, benefit and profit of the Defendants Buzz and Wells.

65.     By reason thereof the Plaintiff is entitled to judgment against the Defendants Wells and Buzz, jointly and severally, for compensatory damages in an amount to be determined at trial, but not less than $100,000 and punitive damages in an amount to be determined at trial but not less than $100,000, with interest from February 15, 2005.

## AS AND FOR PLAINTIFF'S SEVENTH CLAIM FOR RELIEF

(Conspiracy To Defraud)

66.     Plaintiff repeats each and every allegation set forth in Paragraphs "1" through "65" of the Complaint as if set forth at length herein.

67.     Upon information and belief, and subject to additional discovery, the Defendants Benoit, Wells and Buzz conspired to defraud the Plaintiff by concocting a false cover story regarding the Defendant Benoit's reasons for resigning from her position at the Plaintiff, and the identity of her new employer, VH-1.

68.     Upon information and belief, the Defendant Benoit's representations to the Plaintiff that she had accepted a position with VH-1 were false when made and a subterfuge intended to mask the fact that Benoit had entered into a surreptitious agreement with Wells and Buzz to provide "in house" public relations and marketing services in violation of the terms of

15

the Agreement and the Retainer Agreement.

69. Upon information and belief, as a result of the fraudulent scheme which involved *inter alia* Benoit's refusal to disclose that she had already accepted a position to work with Buzz, the Defendant Benoit was able to remain in her position at 5W for two weeks after tendering her resignation, and have the further opportunity to misappropriate trade secrets, confidential information and other proprietary information, including but not limited to the Media Training File.

70. Upon information and belief, had the Defendant Benoit disclosed the truth of her pending employment by the Defendants Wells and Buzz to the Plaintiff, Benoit would have been required to vacate the Plaintiff's offices immediately and been provided with no further access to the Plaintiff's offices or with further opportunity to remove any proprietary information therefrom.

71. Upon discovery of the Defendants' fraudulent scheme, by email correspondence from Benoit to Plaintiff's counsel dated March 21, 2005, the Defendant Benoit represented that she was no longer working for the Defendant Buzz and thus all of the Plaintiff's concerns had been addressed.

72. Upon information and belief, the Defendant Benoit's representation contained in her March 21, 2005 email that she had ceased working for the Defendant Buzz were false when made. Upon information and belief, the Defendant Benoit has continued to be employed by the Defendants Buzz and Wells in breach of the Agreement and to benefit from the Plaintiff's misappropriated proprietary information, notwithstanding her representations to the Plaintiff to

16

the contrary.

73. By reason thereof, the Plaintiff is entitled to judgment against the Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, but not less than $100,000 and punitive damages, in an amount to be determined at trial but not less $100,000 with interest from February 15, 2005.

### AS AND FOR THE PLAINTIFF'S EIGHTH CLAIM FOR RELIEF

(Prima Facie Tort)

74. The Plaintiff repeats each and every allegation set forth in Paragraphs "1" through "73" of this Complaint as if set forth at length herein.

75. The egregious conduct of the Defendants Benoit, Wells and Buzz described herein constitutes a Prima Facie Tort.

76. By reason thereof the Plaintiff is entitled to judgment against the Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, but not less than $100,000 and punitive damages in an amount to be determined at trial but not less than $100,000 with interest from February 15, 2005.

### AS AND FOR THE PLAINTIFF'S NINTH CLAIM FOR RELIEF

(Breach of Covenant of Good Faith and Fair Dealing)

77. The Plaintiff repeats each and every allegation set forth in Paragraphs "1" through "76" of this Complaint as set forth herein.

78. All parties to contracts in the State of New York are required to comply with

the inherent Covenant of Good Faith and Fair Dealing.

79.     Upon information and belief, the Defendants pattern of deception regarding the facts and circumstances of the Defendant Benoit's resignation from the Plaintiff and deceptive misappropriation of Plaintiff's proprietary and confidential information for the use, benefit and profit of the Defendants constitutes a breach of the Covenant of Good Faith and Fair Dealing.

80.     By reason thereof the Plaintiff is entitled to judgment against the Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, but not less than $100,000 and punitive damages in an amount to be determined at trial but not less than $100,000, with interest from February 15, 2005.

## AS AND FOR THE PLAINTIFF'S TENTH CLAIM FOR RELIEF

(Against All of the Defendants For Legal Fees)

81.     The Plaintiff repeats each and every allegation set forth in Paragraphs "1" through "80" of this Complaint as set forth herein.

82.     Pursuant to the Agreement the Plaintiff is entitled to judgment against the Defendant Benoit for "all reasonable attorneys' fees incurred by [Plaintiff] to enforce the terms hereof and to recover for any breaches of the terms hereof by [Benoit]."

83.     Pursuant to the Retainer Agreement, the Plaintiff is entitled to judgment for attorney's fees and costs arising from Blue Fusion's default of the Retainer Agreement that is not timely cured. Upon information and belief, the Defendants Wells and Buzz are related entities of Blue Fusion, and thus are bound by the terms of the Retainer Agreement. By reason

thereof, having violated the Non-Solicitation provision of the Retainer Agreement, and having failed to timely cure, the Defendants Wells and Buzz are liable for all legal fees that the Plaintiff may incur with respect thereto.

84. By reason thereof, the Plaintiff is entitled to judgment against the Defendants Benoit, Wells, and Buzz, for compensatory damages in the amount of legal fees incurred with respect to the respective claims, in an amount to be determined at trial, but not less than $50,000.

WHEREFOR, the Plaintiff demands judgment against the Defendants as follows:

1. Judgment on the Plaintiff's First through Tenth Claims for Relief against each of the respective Defendants and in the amounts as set forth in each of the Claims;

2. Costs and legal fees incurred in prosecuting this action, including any response interposed with respect thereto; and

3. Any other relief which this Court deems to be just.

Dated: New York, New York
April 1, 2005

Yours, etc.

*[signature]*

**FREDERIC C. WEISS (0010)**
Attorney for the Plaintiff 5W Public Relations, LLC.
Office & PO Address
424 Madison Avenue, 12th Floor
New York, New York 10025
(212) 355-5755